UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| SKYMONT FARMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 4:09-cv-65 |
| v. | ) | *Lee* |
| | ) | |
| FEDERAL CROP INSURANCE | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are three motions for summary judgment: one filed by Plaintiffs Skymont

Farms, Anthony Wanamaker, Catrenia Wanamaker, and Dusty Wanamaker [Doc. 50]; one filed by

Defendants Federal Crop Insurance Corporation ("FCIC"), Risk Management Agency ("RMA") and

the United States Department of Agriculture ("USDA") (collectively "federal Defendants") [Doc.

54]; and one filed by Defendant NAU Country Insurance Company ("NAU") [Doc. 56].  For the

reasons explained below, the Court will **GRANT** the motions for summary judgment filed by federal

Defendants and NAU [Docs. 54 & 56] and will **DENY** the motion for summary judgment filed by

Plaintiffs [Doc. 50].

## I.      FACTS AND PROCEDURAL BACKGROUND

### A.      Complaint Allegations and Background Facts

Plaintiffs Anthony Wanamaker ("Anthony") and Catrenia Wanamaker ("Catrenia") are

husband-and-wife owners of several farms which grow nursery crops, and they run their own

nursery business, Dry Shave Nursery, which sells nursery crops [Doc. 53 at PageID#: 211].

Anthony and Catrenia wanted to get their sons involved in the nursery business and, to that end,

gave the nursery crop on a farm called Skymont Farms ("Skymont Farms crop") to son Dusty

Wanamaker ("Dusty") so he could start his own nursery business [*id.*]. Anthony and Catrenia gifted the Skymont Farms crop to Dusty while remaining owners of the underlying land at Skymont Farms, but no document setting forth this transfer was created [Doc. 55 at PageID#: 407]. There was an understanding in the Wanamaker family, however, that if the Skymont Farms nursery business became a success, Dusty would help his parents pay down any debt they had incurred to procure and plant the Skymont Farms crop [*id.*].

Dusty's ownership of the Skymont Farms crop began prior to the 2006 crop year, but he began doing business under the name "Skymont Farms Nursery"[1] for the 2006 crop year [Doc. 53 at PageID#: 211]. It was the first year any business in that name was in operation to sell trees or plants and the first year letterhead and materials with the Skymont Farms Nursery name were created or used [*id.*]. Beginning with the 2006 crop year, Dusty opened a banking account in his name doing business as Skymont Farms Nursery, managed the labor on the Skymont Farms property, determined what payments to make to laborers, and signed checks [*id.* at PageID#: 212]. Dusty did not own any equipment at that time and had not secured any debt in the name of the nursery [Doc. 55 at PageID#: 407].

Dusty sought to insure the Skymont Farms crop for the 2006 year, and insurance agent Richard Mackie brought him an application and plant inventory value report ("PIVR") forms to prepare and sign [Doc. 53 at PageID#: 213]. Dusty submitted the completed PIVR and application, and on February 15, 2006, he received a letter from NAU which confirmed a policy had been issued to him for the 2006 crop year [*id.*]. Dusty received another document from NAU dated the same day

---

[1] The Court will generally refer to the land and crops at issue as "Skymont Farms" or "the Skymont Farms crop," but Skymont Farms Nursery is the name for Dusty's nursery business.

that was titled "Confirmation" which indicated the insurance application had been accepted [*id.*].[2]

On or about April 7, 2006, a hailstorm damaged the Skymont Farms crop and Dusty filed a claim pursuant to the insurance policy issued by NAU [Doc. 1 at PageID#: 6]. The RMA joined NAU in the adjustment process due to the large size of the claim and Dusty's claim was denied by letter of June 2007 [*id.* at PageID#: 8; Doc. 57 at PageID#: 444]. In the letter, RMA informed Dusty the claim was being denied, in relevant part, because Dusty provided no evidence that he owned an insurable interest in the Skymont Farms crop and Dusty failed to provide valuation information as to plant sales for the previous three years as required [Doc. 57 at PageID#: 444-45; Doc. 58-5]. Plaintiffs timely appealed the denial of the claim to the National Appeals Division and, after a two day evidentiary hearing and a telephonic hearing, the hearing officer upheld the decision to deny the claim [Doc. 1 at PageID#: 8; Doc. 57 at PageID#: 445; Doc. 58-6]. Thereafter, Plaintiffs sought Director Review from the USDA, and the director upheld the denial of Plaintiffs' claim, which finalized the determination that the policy issued to Plaintiffs was void because Dusty d/b/a Skymont Farms Nursery failed to show he had a 100% insurable share of his nursery enterprise [Doc. 58-7].

As a result of the Director Review, Plaintiffs filed two separate cases: this case against NAU, FCIC, RMA, and USDA, and another case, Civil Case No. 4:09-cv-77, against the insurance agency and the agents who sold Dusty the policy in question. In the instant case, Plaintiffs allege the crop insurance claim was properly asserted under the policy and that Defendants breached their contractual obligation to Plaintiffs by failing to pay the insurance claim, such that they are jointly and severally liable for Plaintiffs' damages [Doc. 1 at PageID#: 7]. Plaintiffs further assert that

---

[2] The Complaint alleges that NAU, in conjunction with FCIC and RMA, sold and issued a policy of insurance to Skymont Farms through Skymont Farms' authorized agent, Dusty Wanamaker, to insure the Skymont Farms crop for the 2006 crop year [Doc. 1 at PageID#: 6].

3

Defendants are liable for bad faith insurance settlement practices and bad faith refusal to pay pursuant to state statutes [*id.* at PageID#: 7-8].

### B. Procedural Posture

By Order of April 27, 2011, and at the parties' request, the Court set a briefing schedule to address what the parties determined was a threshold issue to insurance coverage: whether Plaintiffs had an insurable interest in the subject property [Doc. 43]. All three sets of parties (Plaintiffs, the federal Defendants, and NAU) filed dispositive motions on the topic of whether Dusty had a 100% insurable interest in the subject property [Docs. 50, 54 & 56] and oral argument on the motions was held in January 2012. This threshold and dispositive issue is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Id.* at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907. A mere scintilla of evidence is not

enough to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL), 2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011). The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute. *Id.* In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* A party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to

5

it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).[3]

## III.  ANALYSIS

### A.  Overview of Parties' Arguments

Unlike the situation in most motions for summary judgment, the parties here conceded at oral argument that the material facts are not in dispute.  However, the Court will briefly review the facts relied upon by the various parties in support of their respective arguments.

#### 1.  Plaintiffs' Motion

Addressing certain undisputed facts, Plaintiffs argue that Dusty could insure property that he received as a gift; that he qualified as an "operator" of the nursery and thus he could properly obtain insurance for the Skymont Farms crop; and that Rob Young, NAU's Regional Claims Manager, did not identify any issues with Dusty's ownership of the nursery during the claims adjustment process [Doc. 53 at PageID#: 220-23].  Plaintiffs further argue that Dusty satisfied all the requirements to have insurance attach–the completed application, the PIVR, nursery catalogs or a price list, and substantial beneficial interest information–and that he was thus entitled to coverage.

_____

[3] The applicable standard of review in the instant case, which has an administrative record, is less easily determined.  In a motion to withdraw the administrative record, the parties noted "this Court ruled that the case will be heard _de novo_ and not on the record" and referenced a prior order issued by the Court before the parties consented to proceeding before the magistrate judge [Doc. 39].  In the prior order, however, the Court did not explicitly state that the standard of review would be _de novo_.  The pleading at issue in the prior order was a motion to set a briefing schedule on the administrative record [Doc. 31].  This motion came on the heels of a motion to strike Plaintiffs' jury demand [Doc. 14], which the Court had already denied [Doc. 28].  When the Court upheld the law of the case (that Plaintiffs' jury demand would not be stricken) in denying the motion to set a briefing schedule or proceeding on the administrative record, it did so without making a ruling regarding the standard of review.  In any event, the parties have presented their summary judgment motions utilizing a _de novo_ standard of review and, therefore, the Court will utilize a _de novo_ standard as well.  In doing so, the Court reaches a similar conclusion to that reached in both the administrative Appeal Determination and the Director Review Determination; that is, the policy is void because Dusty did not have a 100% insurable share [Docs. 58-6 & 58-7].

6

In addition, Plaintiffs assert an estoppel argument and contend that because NAU accepted Dusty's application and verified that he had coverage for the Skymont Farms crop, NAU should be estopped from denying coverage, as the grounds for denying coverage identified after the insurance claim was submitted stemmed from NAU's agent's faulty direction and guidance [*id.* at PageID#: 228-33].[4]

## 2. Federal Defendants' Motion

The federal Defendants argue the undisputed facts do not indicate a valid transfer of the Skymont Farms crop to Dusty and, as such, Dusty does not qualify as an individual with a relevant share to insure in the crops [Doc. 55 at PageID#: 409]. This argument is based in the premise that the Skymont Farms crop could not have been transferred as a gift without a transfer of the underlying land as well [*id.* at PageID#: 410-11]. The federal Defendants make other arguments with respect to the family's failure to file any federal gift tax return; Anthony and Catrenia's ownership of the land; the reversibility of any gift made; and the overlap between the Skymont Farms nursery business and Anthony and Catrenia's nursery operations [*id.* at PageID#: 412]. The federal Defendants also argue that Dusty misrepresented a material fact on his application when he stated that he had a 100% interest in the Skymont Farms crop [*id.* at PageID#: 411-12]. Finally, the federal Defendants argue that even if Dusty's misrepresentation of his 100% interest was innocent, the policy is still properly voided because his parents are in fact the true owners [*id.* at PageID#: 413]. The federal Defendants acknowledge that Dusty may have had some interest in the Skymont Farms crop, but assert that it was never 100% [*id.*].

---

[4] As to the other grounds upon which coverage was denied, Plaintiffs argue that Dusty had no obligation to report sales for the past three years on his application because he was a new applicant and the insurance company can inspect the nursery to verify the inventory listed on the PIVR; here, NAU conducted no inspection, but accepted his application even though it did not indicate Dusty's sales for the past three years [Doc. 53 at PageID#: 224-26].

### 3. NAU's Motion

In addition to the above facts, NAU asserts other undisputed facts are relevant to the insurable interest issue. For instance, NAU states that Skymont Farms has never been incorporated, has never been a partnership, and may never have filed any tax returns [Doc. 57 at PageID#: 445]. All sales of nursery crops planted on Skymont Farms land were made through Anthony and Catrenia's nursery because Dusty did not have a license to sell nursery products at the time [*id.* at PageID#: 446]. Dusty borrowed all equipment used on Skymont Farms from his parents [*id.*]. Skymont Farms did not have a bank account or any material bearing its name at the time Dusty applied for crop insurance [*id.*]. Catrenia handled all the bookkeeping for the Skymont Farms crop and nursery business and had power of attorney over the bank account Dusty opened months after submitting his insurance application [*id.* at PageID#: 446-47]. Anthony and Catrenia added funds to the Skymont Farms bank account when necessary to cover expenses [*id.* at PageID#: 447]. Dusty never received any salary or other distribution from Skymont Farms and instead continued to receive his hourly wage from his parents' nursery [*id.*]. NAU further asserts that Mr. Young testified he worked with Anthony 90% of the time during the claim adjustment process, Anthony was heavily involved on behalf of the Skymont Farms insurance claim, and Mr. Young does not remember ever meeting with Dusty without Anthony present [*id.*]. Mr. Young's notes reference meetings with Anthony, but not Dusty, and Anthony was the individual who contacted the experts to evaluate damage to the Skymont Farms crop [*id.*].

NAU argues the named insured on a crop insurance policy must be an owner-operator, landlord, tenant, or sharecropper with a bona fide insurable interest to purchase coverage, and the undisputed facts show that Dusty did not have a bona fide insurable interest [Doc. 57 at PageID#:

8

449-50]. NAU asserts there was no legitimate transfer of the Skymont Farms crop because there is nothing in writing to document this gift and no gift tax was ever paid [*id.* at PageID#: 452]. Moreover, Anthony and Catrenia maintained their substantial or total interest in the Skymont Farms crop by virtue of their control over Skymont Farms' finances, their agreement that Dusty would repay his parents if the Skymont Farms nursery business became profitable, their payment of the insurance premium for the policy, Anthony's involvement in the claim adjustment process, and their involvement in the instant lawsuit [*id.* at PageID#: 452-53]. NAU further contends Skymont Farms was never established as a corporation, had no employees, paid no salaries (not even to Dusty), did not have a bank account at the time of the application, owned no equipment, and had no sales of its own [*id.* at PageID#: 453]. Also, Dusty has realized no financial gain or loss from the Skymont Farms nursery business in the past five years and, as noted above, continues to draw a wage from his parents' nursery [*id.* at PageID#: 454].

As such, NAU argues the weight of the undisputed evidence demonstrates Plaintiffs had no bona fide interest in the Skymont Farms crop. As such, NAU argues the crop insurance policy was void because there was not a legitimate transfer of the Skymont Farms crop to Dusty, Anthony and Catrenia maintained a financial and controlling role with the Skymont Farms nursery business–and certainly had more than a 10% interest in the crop that should have been disclosed on the application, Skymont Farms does not operate as a legitimate separate business, and Dusty had little financial stake in the business [*id.*].

## B.  Applicable Law

The applicable insurance policy provisions for crop insurance policies are codified in the Code of Federal Regulations ("C.F.R."). The preliminary language in the section of the C.F.R.

setting out the policy provisions states that "[a]pplication for insurance. . . must be made by any person who wishes to participate in the program, to cover such person's share in the insured crop as landlord, owner-operator, crop ownership interest, or tenant. No other person's interest in the crop may be insured under an application unless that person's interest is clearly shown on the application and unless that other person's interest is insured in accordance with the procedures of the Corporation." 7 C.F.R. § 457.8(a). This section also sets forth the "Basic Provisions" that are included in each crop insurance policy, and the Basic Provisions define certain relevant terms as follows:[5]

> Insured - The named person as shown on the application accepted by us. This term does not extend to any other person having a share or interest in the crop (for example, a partnership, landlord, or any other person) unless specifically indicated on the accepted application.
>
> . . .
>
> Share - Your percentage of interest in the insured crop as an owner, operator, or tenant at the time insurance attaches. . . .
>
> Substantial beneficial interest - An interest held by any person of at least 10 percent in you. The spouse of any individual applicant or individual insured will be considered to have a substantial beneficial interest in the applicant or insured. . . .

The policy provisions also contain the following with respect to the voidance of policies:

> 27. Concealment, Misrepresentation or Fraud.
>
> (a) If you have falsely or fraudulently concealed the fact that you are ineligible to receive benefits under the Act or if you or anyone

---

[5] The regulations in effect for the 2006 crop year did not define "insurable interest," but it is now defined as "[y]our percentage of the insured crop that is at financial risk." 7 C.F.R. § 457.8. It is also defined in 7 C.F.R. § 400.651 as "[t]he value of the producer's interest in the crop that is at risk from an insurable cause of loss during the insurance period. The maximum indemnity payable to the producer may not exceed the indemnity due on the producer's insurable interest at the time of loss."

assisting you has intentionally concealed or misrepresented any material fact relating to this policy:

> (1) This policy will be voided; and
>
> (2) You may be subject to remedial sanctions in accordance with 7 CFR part 400, subpart R.

> (b) Even though the policy is void, you may still be required to pay 20 percent of the premium due under the policy to offset costs incurred by us in the service of this policy. If previously paid, the balance of the premium will be returned.

> (c) Voidance of this policy will result in you having to reimburse all indemnities paid for the crop year in which the voidance was effective.

> (d) Voidance will be effective on the first day of the insurance period for the crop year in which the act occurred and will not affect the policy for subsequent crop years unless a violation of this section also occurred in such crop years.

[Doc. 74-1 at PageID#: 655-56, 678], 7 C.F.R. § 457.8.

## C. Analysis

The Court now turns to the threshold issue: Did Dusty had an insurable interest in the Skymont Farms crop for the 2006 crop year? While the Court finds Dusty did have an insurable interest, it also finds Dusty's interest was not a 100% insurable interest as represented in the policy application. Because this misrepresentation was material, the policy was properly voided.

### 1. Insurable Interest

The notion of an insurable interest has been interpreted by only a few courts in conjunction with the crop insurance regulations cited above. The courts that have addressed this notion have generally agreed that benefit and loss are key elements of an insurable interest finding: "It is well settled that one has an insurable interest in property by the existence of which he receives a benefit,

11

or by the destruction of which he suffers a loss, regardless of whether he has title to the property."
*Parks v. Fed. Crop Ins. Corp.*, 416 F.2d 833, 839 (7th Cir. 1969). "All that is necessary is an interest in property by . . . which (the insured) receives a benefit, or by the destruction of which he will suffer a loss . . . [n]either legal title nor possession is required." *Prince v. Royal Indem. Co.*, 541 F.2d 646, 649 (7th Cir. 1976) (citations and internal quotations omitted). "An insured must have an insurable interest in the crop in order for insurance to attach. Under the policy, an insured is the 'named person' as shown on the application . . . accept[ed] and the term does not extend to any other person or entity having an interest in the crop. Crop insurance only attaches to the share that the person completing the application has in the crop." *Great Am. Ins. Co. v. Mills*, No. 4:06-cv-01971-RBH, 2008 WL 2250256, at *6 (D.S.C. May 29, 2008).

Although Defendants have based much of their argument on the possibly incomplete gift of the Skymont Farms crop, Dusty's ownership of the Skymont Farms crop, or lack thereof, is not of utmost importance. The regulations specify the categories of possible insureds as "landlord, owner-operator, crop ownership interest, or tenant," but the definition of "share" in the Basic Provisions reads "[y]our insurable interest in the insured crop as an *owner, operator*, or tenant at the time insurance attaches." 7 C.F.R. § 457.8 (emphasis added). Mr. Young testified that the operator of a nursery could have an insurable share in the crop if they were named on the application [Doc. 53-28 at PageID#: 383]. Based on the undisputed facts, Dusty could, at the very least, qualify as an operator because he was the main individual responsible for the day-to-day operations of Skymont Farms. He opened a bank account for the nursery business that would sell the Skymont Farms crop, hired employees to work at the nursery, ordered payment of those workers from the aforementioned bank account, and worked at Skymont Farms himself [Doc. 53-1 at PageID#: 240-43; Doc. 53-2 at

PageID#: 253-54; Doc. 53-3 at PageID#: 261-63; Doc. 53-6 at PageID#: 287-88; Doc. 53-7 at PageID#: 294; Doc. 53-9 at PageID#: 307]. Dusty reported his profit and loss from the operation of Skymont Farms on a 2006 Schedule F form attached to his 2006 federal tax return, which indicated he paid laborers for Skymont Farms $35,000.00 and incurred additional expenses for a total of $59,728.00; sales for the year are recorded as $59,704.00 [Doc. 53 at PageID#: 214; Doc. 53-18 at PageID#: 335]. Although the facts do not establish that Dusty was the sole owner of the Skymont Farms crop, his parents' ownership of the underlying land and their participation in the financial affairs of the nursery does not negate Dusty's insurable role in the Skymont Farms nursery business as either an operator of Skymont Farms or as having some other kind of "crop ownership interest."[6]

In addition, under the benefit/loss analysis noted above, there are additional facts which might speak to the insurable interest issue. It appears there was some informal agreement between Dusty and his parents whereby Dusty might give money to his parents to pay off their line of credit if the Skymont Farms nursery business was successful, and he would be able to give the Skymont Farms crop back to his parents if it proved unsuccessful [Doc. 53-8 at PageID#: 303; Doc. 55-2 at PageID#: 435-36]. Furthermore, Dusty did not take on any debt in the Skymont Farms name, did not own equipment used for Skymont Farms, and did not draw a salary from Skymont Farms [Doc. 53-1 at PageID#: 239-40; Doc. 55-1 at PageID#: 422; Doc. 58-8 at PageID#: 504]. Nonetheless, as the individual in charge of daily operations at Skymont Farms, Dusty stood to benefit from the

---

[6] For reasons explained in more detail below, the Court need not make a determination as to whether Dusty owned the Skymont Farms crop. The undisputed facts establish that Dusty had some insurable interest in the crop even if he did not own the crop, but the facts also establish that Anthony and Catrenia had an insurable interest in the crop. The exact percentages of those interests in the Skymont Farms crop are not determinative in the Court's analysis which will focus instead on a material misrepresentation made in Dusty's insurance application.

13

success of the nursery crop, as presumably he would have eventually drawn a salary from Skymont Farms. In addition, one of the main reasons Anthony and Catrenia wanted to start Dusty with his own nursery business was so he could pay off his house [Doc. 53-3 at PageID#: 263; Doc. 53-7 at PageID#: 292-93; Doc. 55-2 at PageID#: 435-36]. Therefore, if the Skymont Farms nursery business proved unsuccessful, Dusty could return the Skymont Farms crop to his parents and would presumably cease the daily operation of the nursery business, which could have resulted in financial loss to him in terms of lost salary and the inability or reduced ability to pay down his own debt.

Based on the undisputed facts, the Court concludes Dusty had an insurable interest in the Skymont Farms crop and was entitled to insure his share in the crop for the 2006 crop year.

### 2. Misrepresentation

Because the Court has concluded that Dusty had some insurable share in the Skymont Farms crop, the Court must next address whether Dusty made any material misrepresentations on his insurance application. In the Court's view, the most significant possible misrepresentation Defendants have asserted is Dusty's failure to specify Anthony and Catrenia as other individuals with a substantial beneficial interest in the Skymont Farms crop. If Dusty did not have a 100% share in the crop, as Defendants argue, he had to disclose any person or entity with an interest of more than 10% in the Skymont Farms crop. If he failed to make this necessary disclosure, the policy could be voided if this failure constituted a material misrepresentation.

There are several undisputed facts in the record which support a finding that Anthony and Catrenia maintained a substantial beneficial interest of more than 10% in the Skymont Farms crop. Anthony and Catrenia owned the underlying land at Skymont Farms [Doc. 53-6 at PageID#: 286; Doc. 53-7 at PageID#: 291; Doc. 58-8 at PageID#: 497]; it appears no one filed a federal gift tax

14

return for the exchange of the nursery stock, which may put Dusty's ownership of the Skymont Farms crop in question [Doc. 55-1 at PageID#: 419]; Catrenia handled many of the financial transactions for Skymont Farms in addition to the other family nurseries and had power of attorney for the Skymont Farms account [Doc. 53-3 at PageID#: 262; Doc. 53-8 at PageID#: 302; Doc. 58-8 at PageID#: 504]; the plants sold from Skymont Farms were actually sold through Anthony and Catrenia's nursery business because Dusty did not have a nursery license for the 2006 crop year [Doc. 58-8 at PageID#: 500, 504]; Dusty borrowed equipment from his parents for the work on Skymont Farms [Doc. 53-1 at PageID#: 239]; Dusty and his parents had an agreement of sorts by which he would pay towards their line of credit if the Skymont Farms nursery business proved successful [Doc. 53-8 at PageID#: 303; Doc. 58-8 at PageID# 503-04]; the insurance adjusters communicated extensively with Anthony about the insurance claim on the policy covering the Skymont Farms crop [Doc. 53-2 at PageID#: 249; Doc. 58-8 at PageID#: 505; Doc. 58-10 at PageID#: 518-21]; and Anthony and Catrenia have joined in this lawsuit because of time and stress involved in processing the insurance claim and based on their expectation that Dusty might pay part of their line of credit [Doc. 58-9 at PageID#: 515].

These undisputed facts establish that Anthony and Catrenia maintained a significant share in the Skymont Farms crop. The ownership of the underlying land and their expectation to reap some of the success from the nursery would give them a financial interest. In addition, their involvement with the insurance claim adjustment process and participation in this lawsuit suggest that they seek to protect their own financial interest in the Skymont Farms crop. Although the family and the community may have regarded Dusty as the owner and operator of Skymont Farms, the undisputed facts, reviewed in the context of an insurable interest analysis, establish that Anthony

15

and Catrenia were still extensively involved with the Skymont Farms crop and the Skymont Farms nursery business. As such, the Court finds that Anthony and Catrenia had an interest in the Skymont Farms crop that exceeded 10% and they should have been named as individuals with a substantial beneficial interest in Dusty's insurance application for the 2006 crop year. The Court further finds that Dusty's failure to disclose Anthony and Catrenia's interest was a misrepresentation on the application.[7]

### 3. Materiality

The relevant question next becomes whether this misrepresentation was a material one, such that Defendants could properly void the policy pursuant to section 27 of the insurance policy, which governs concealment, misrepresentation, and fraud. Initially, the issue of materiality was not fully addressed in the parties' briefs. The federal Defendants merely claimed in response to Plaintiffs' motion that the misrepresentation of a 100% crop share causes there to be no insurable interest [Doc. 59 at PageID#: 557] and only addressed materiality in their own brief by stating that the "misrepresentation materially effected the policy by allowing him a 100% share payment despite the policy's requirements to cover only a 'person's share in the insured crop'" and stating that the

---

[7] As will be discussed *infra*, whether a misrepresentation has been made is a question of fact under Tennessee law. *See Morrison v. Allen*, 338 S.W.3d 417, 428 (Tenn. 2011).

16

true owner was a material fact that required disclosure [Doc. 55 at PageID#: 413-14].[8] NAU argued in response to Plaintiffs' motion that Dusty must have had at least a 90% interest in the Skymont Farms crop to make the application valid and that his contention that he had an insurable interest as an "operator" would not support an application asserting a 100% share [Doc. 64 at PageID#: 583-84].[9] NAU did not, however, make any argument about why this misrepresentation would be material (even though a chart contained in its brief reads that "insurance obtained by misrepresentation of a material fact is voidable") and simply stated that the policy would be void

_____

[8] The federal Defendants cited to *Parks v. Fed. Crop Ins. Corp.*, 416 F.2d 833, 839-40 (7th Cir. 1969) for this proposition, but *Parks* does not say that the true owner is a material fact. In *Parks*, the plaintiffs had entered into contracts with an agricultural association whereby the association would provide corn and labor for planting and detasseling and, in exchange for plaintiffs providing the land and satisfactorily planting and harvesting the crop, plaintiffs would be paid per acre plus a bonus amount for each bushel produced in excess of 20 bushels an acre. *Id.* at 835. The plaintiffs represented their shares in the corn crop as either 100% or 50% in their insurance applications (but did not reference the growing contracts with the association), and the district court found that the policies were voidable because the association had the entire interest in the corn and plaintiffs only had an interest in profit for bonus bushels. *Id.* at 836-37.

On appeal, the Seventh Circuit found that the plaintiffs did bear a financial risk due to the minimum and maximum amounts payable on the crop and that they were producers of the crops, such that they could insure the crops. *Id.* at 838. Having resolved the insurable interest question, the *Parks* court turned to whether the failure to disclose the association's interest was a misrepresentation of a material fact. *Id.* at 839. The Seventh Circuit noted that "[t]he test of materiality in insurance law is whether the facts if truly stated might reasonably have influenced the insuror in deciding whether it should reject or accept the risk, and whether a higher premium should be charged" and that the plaintiffs' misrepresentations as to the share of the association, if any, were *not* misrepresentations of material facts and the policies were *not* voidable. *Id.* at 839-40. The court noted that defendant "failed to show how the growing contracts . . . would have influenced the decision to issue policies of insurance to these plaintiffs" and, in fact, the contracts may have made the insurance risk more attractive because the minimum compensation per acre lowered the insurance company's loss. *Id.* at 840.

[9] NAU did not specifically address whether Dusty could have an insurable interest as an operator and, instead, continued to assert that Dusty had no insurable interest. NAU acknowledged Plaintiffs' argument with respect to Dusty being an operator, but only to address it in the context of its argument that being an operator is contrary to the assertion that Dusty had a 100% share in the Skymont Farms crop.

17

based on the lack of a 100% share [*id.* at PageID#: 584].

To further address the issue of materiality, the Court held oral argument on the parties' motions on January 12, 2012. Prior to holding argument, the Court asked the parties to be prepared to set forth the federal or state statute, regulation, or policy provision which might define materiality and address the materiality of any misrepresentation on Dusty's application [Doc. 71]. During argument, Plaintiffs asserted that Dusty had a 100% share in the Skymont Farms crop as an owner and 100% share as an operator. Plaintiffs indicated they believed only federal law could apply to define material, but could not refer the Court to any definition of material in the federal regulations, policy provisions, or statute. Plaintiffs agreed that materiality is a question of law.

In lieu of providing a definition of material, Plaintiffs produced the RMA Final Agency Determination ("FAD") 018, which was made Exhibit 1 to the hearing. FAD-018 states that "[f]ailure to comply with the policy requirements constitutes a breach of the insurance contract and could jeopardize receipt of any indemnity if such breach is determined to be *substantive*." *Final Agency Determination: FAD-018*, http://www.rma.usda.gov/regs/533/2003/fad-018.html. Plaintiffs argued that "material" could be equated with "substantive" such that any misrepresentation would need to be substantive in order to permit the voiding of the policy. Plaintiffs argued that there was no dispute about the amount of loss or the existence of the loss, and that the only dispute was, essentially, who would receive the money from the loss if Dusty did not have a 100% interest, such that any misrepresentation was secondary, and therefore not substantive or material.

NAU similarly could not provide the Court with any definition of materiality in the regulations, policy provisions, or federal statutes, but agreed that "material" and "substantive" would likely have the same meaning. NAU argued, however, that the identification of who owns the crops

18

at issue is always material because the insurance company has a right to know who they're insuring. In reference to the statements in FAD-018, NAU argued that nonsubstantive misrepresentations would be clerical or typographical errors; the misrepresentation in this case, however, would directly affect the loss and the amount of loss because the insured would get 100% of the payment for less than 100% of the insured's share in the crops. Although NAU agreed the misrepresentation in this case may not have made a difference in the premium charged on the policy and agreed that the catastrophic coverage would not necessarily lead to a difference in the risk at the inception of the insurance policy, as such an event would be outside anyone's control and not dependent on the owner, NAU pointed out that Anthony took a very active role in the adjustment of the claim for the Skymont Farms crop and the insurance company would have liked to know if Anthony had the true ownership interest in the Skymont Farms crop. NAU asserted that many variables are involved in adjusting loss, and it is material for the insurance company to know the owner of the crops to properly investigate and adjust a claim based on the owner's history and reputation. NAU claimed that even if Dusty could qualify as an operator, he would not have a 100% interest in the Skymont Farms crop, which was what he certified to NAU on his policy application.

The federal Defendants first argued that no operator or tenant could ever have a 100% share in the Skymont Farms crop because whoever owned the underlying land would have an interest by virtue of any money they received from that arrangement. As such, the federal Defendants argued Dusty could not have had a 100% share, as he certified on the insurance application, and that he could not recover for a share amount that he did not have. The federal Defendants believed the Court could look to state law for a definition of material, and the parties agreed the policy was issued in Tennessee such that Tennessee law could apply. The federal Defendants pointed the Court to

19

*Acuity Mut. Ins. Co. v. Frye*, 699 F. Supp. 2d 975 (E.D. Tenn. 2010) for an overview of the Tennessee law on materiality, and argued that because the policy states one can only insure one's share, a representation that an insured has a 100% share when he does not must be material. The federal Defendants noted that unlike most insurance, crop insurance policies are written by Congress, insureds must comply with the rules outlined by Congress, and only Congress can address any issues of fairness. The federal Defendants argued that if the insured represents that he is the 100% owner of the crop when is not, Congress dictates the policy is voidable and the insured can recover nothing. The general powers in the Federal Crop Insurance Act ("FCIA") state that "[s]tate and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts. . . provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts. . . ." 7 U.S.C. § 1506(l). The policy provisions state, "[i]f the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy" [Doc. 74-1 at PageID#: 679].

The Court has located only one definition of "material" in the crop insurance regulations, although it does not appear that this definition existed at the time the policy was issued and may not apply to the instant case. This newer provision defines "material" as "a violation that causes or has the potential to cause a monetary loss to the crop insurance program or it adversely affects program integrity, including but not limited to potential harm to the program's reputation or allowing persons to be eligible for benefits they would not otherwise entitled." 7 C.F.R. § 400.452. Otherwise, "material" does not seem to be defined in the regulations, in the FCIA, or otherwise in the applicable

policy provisions. Therefore, the Court can assume that state insurance law on the issue of materiality would not conflict with the federal regulations or statute, and the Court can look to definitions of material stemming from the insurance law of the state in which the policy was issued.

As the parties have agreed that the insurance policy was issued in Tennessee, the Court will look to Tennessee law on this issue. As noted above, whether a misrepresentation was made is a question of fact, and the Court has already determined a misrepresentation was made as a matter of undisputed fact. *See Williams v. Tennessee Farmers Life Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, at *3 (Tenn. Ct. App. May 12, 2011) ("to avoid coverage based on an allegation of misrepresentation in the application for insurance, the insurer first must demonstrate that the insured provided an answer that was false . . . [w]hether an answer was false. . . [is a] question[] of fact. . ."). "Once it has been determined that a misrepresentation exists, it is a question of law for the Court to decide whether the misrepresentation increases the risk of loss to the insurer." *Acuity*, 699 F. Supp. 2d at 985; *see also Morrison*, 338 S.W.3d at 428.

After reviewing the facts and considering the parties' arguments, the Court concludes that Dusty's misrepresentation was material such that the policy could be properly voided. Even if Dusty had an insurable interest as an operator, as the Court has found, it cannot be a 100% interest because his parents' ownership of the land and heavy involvement with the Skymont Farms crop would give them some interest (certainly more than 10%) in the crop as well. Dusty's failure to disclose his parents' substantial beneficial interest is material because the insurance company needs to know who it is insuring when it executes the policy. While it is true that the ownership of the crop would not have an impact on the existence or amount of the loss when operating under a catastrophic coverage policy, the adjustment of the loss would certainly be affected if the named insured was not truly the

owner of the crop. The insurance company has a legitimate interest in determining whether the amount of the claimed loss is accurate, which is informed by the reputation of the crop owner and any past claims made. Therefore, if the insured represented himself as the owner but the crops were instead owned by someone else, the facts involved could be very different, and the Court can conceive of ways in which this type of misrepresentation could increase the insurance company's risk of loss. Indeed, the facts of this case establish that Anthony took a leading role during the adjustment process and worked with the adjusters far more than Dusty did, presumably to protect his undisclosed share in the Skymont Farms crop.

Although this case presents what is perhaps an unusual circumstance in which any award for the loss might be going to the same "pot" due to the overlapping nature of the Wanamaker family's nurseries and the nurseries' financial structure, this circumstance does not lessen the material impact of Dusty's misrepresentation. The federal Defendants noted at oral argument that if an insured represents a 100% share and does not have a 100% share, it does not matter what amount of share the insured actually has because the policy provisions dictate that the policy may be voided and the recovery will be zero. Finally, as the federal Defendants argued, the policy terms, knowledge of which is imputed to the participants of the crop insurance program, clearly state one can only insure one's share in the crops. Thus, attempting to insure more than one's share (and receive more than one's share of any loss) is material.[10] The Court concludes that Dusty made a material misrepresentation on his insurance application by claiming he had a 100% share in the Skymont Farms crop. Accordingly, the policy insuring the Skymont Farms crop for the 2006 crop year was

---

[10] The applicable policy provision states that "[i]nsurance will attach only to the share of the person completing the application and will not extend to any other person having a share in the crop" unless certain conditions are met in a partnership, landlord-tenant, marriage, or crop share context [Doc. 74-1 at PageID#: 665].

properly voided pursuant to section 27 of the insurance policy.

### 4. Plaintiffs' Estoppel Argument

Plaintiffs agreed at oral argument that none of the state law claims asserted against any of the Defendants in this case would survive a determination that the policy was properly voided. In Plaintiffs' brief, however, they argued that even if the policy could be voided, the insurance company should have notified Dusty within 30 days after submission of the insurance application if there was a problem with the Skymont Farms crop and, in the absence of such a notification or the denial of Dusty's application, and because Dusty relied on the insurance coverage attaching, Defendants should be estopped from denying or voiding coverage [Doc. 53 at PageID#: 231-32]. Plaintiffs assert Dusty relied on the direction of NAU's insurance agents as to the information needed on the application, PIVR, and other documents and NAU is therefore bound by the actions of those agents [*id.* at PageID#: 233].

In response, the federal Defendants argued that estoppel was not available in a claim against the government and, in any event, no government agent was involved in making any representations to Dusty with regard to his insurance application [Doc. 59 at PageID#: 557-59]. The federal Defendants contend that while NAU's agents are, by extension, working for the federal agencies by submitting applications for crop insurance, allowing such agents' actions to cause the federal agencies to be estopped from denying coverage would be untenable [*id.* at PageID#: 558-59]. The federal Defendants further argue that NAU's agents could not expand the scope of coverage or modify the regulations to permit coverage to an individual without an insurable interest [*id.* at PageID#: 559].

NAU contends that Dusty is charged with knowledge of the federal crop insurance program

and that, as such, he cannot establish as a matter of law that he relied upon an insurance agent's instructions or statements [Doc. 64 at PageID#: 585]. NAU argues Dusty had a duty to submit correct information to NAU and neither NAU or its agent had a duty to investigate the information before issuing insurance [*id.* at PageID#: 586]. Plaintiffs argue, in contrast, that the Nursery Crop Underwriting Guide[11] does contemplate that the insurance company will inspect the nursery operations for any new nursery before accepting an insurance application [Doc. 68 at PageID#: 608-09].

Pursuant to *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), there is no estoppel against the federal Defendants in a case involving crop insurance policies. In *Merrill*, the plaintiff was told by an agent of the FCIC that he could insure the entire crop of spring wheat planted when, in fact, he could not insure the acres planted on reseeded winter wheat. *Id.* at 382. The plaintiff discovered the agent erred when a drought destroyed most of the crop and he unsuccessfully attempted to collect on the loss. *Id.* The United States Supreme Court held that the insurance regulations were binding on all who sought insurance under the FCIA regardless of actual knowledge, noting the duty of the courts "to observe the conditions defined by Congress for charging the public treasury" and uphold the terms and conditions imposed by Congress to create government liability for crop insurance policies. *Id.* at 385.

The principles outlined in *Merrill* have been employed to prevent litigants from asserting

---

[11] Plaintiffs attached portions of the Nursery Crop Insurance Underwriting Guide to the memorandum in support of their motion [Docs. 53-23, 53-24, 53-30, & 53-31]. The applicable portion states that an inspection must occur for the first year a nursery operation is insured to verify that the nursery crop inventory exists and the reported values are reasonable, the risk is acceptable, and to ensure that insurability requirements are met [Doc. 53-30 at PageID#: 395-97]. The Guide states that the inspection must be completed before accepting an application for insurance [*id.* at PageID#: 395].

estoppel arguments against the government in a variety of factual scenarios, and it is generally settled that the United States cannot be estopped by acts of its individual officers or agents. *See Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990); *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1108 (6th Cir. 1984). The reasoning for the prohibition against estoppel stems from a "concern that government agents. . . by their statement or conduct might waive or revise the laws as enacted by Congress. . . [and] might . . . give away assets or funds that the government holds for the public good under congressional mandate." *Housing Authority of Elliott Cnty. v. Bergland*, 749 F.2d 1184, 1190 (6th Cir. 1984). Courts have acknowledged, however, that estoppel might arise in circumstances involving "affirmative misconduct" by the government. *River Coal*, 748 F.2d at 1108; *Rogers v. Tenn. Valley Authority*, 692 F.2d 35, 37-38 (6th Cir. 1982).

In the instant case, the insurance agent alleged to have inadequately guided Plaintiffs through the insurance process was an agent of NAU, not the government. This agent's alleged failure to direct Plaintiffs to provide the correct information on the application would not fall under any exception for affirmative misconduct because he is not a government agent and, as recognized in *Merrill*, Plaintiffs are charged with knowledge of the applicable regulations when dealing with the government (and a government sponsored program such as crop insurance). Accordingly, Plaintiffs' estoppel argument fails as to the federal Defendants, as these federal agencies cannot be estopped under circumstances involving possible misrepresentations by an agent of a private insurance company which issued a crop insurance policy reinsured by the FCIC.

As for NAU, the success or failure of Plaintiffs' estoppel argument is somewhat less clear cut. NAU is not the government or an agency of the government, it is NAU's agent who allegedly guided Plaintiffs in filling out the insurance application, NAU issued the policy to Dusty with no

inspection of the Skymont Farms crop and no identification of problems with the application, and NAU's adjuster testified he identified no problems with the ownership of the Skymont Farms crop while adjusting Dusty's claim. In addition, *Merrill* was decided prior to the advent of private insurance companies issuing crop insurance policies which were reinsured by the FCIC, and the Supreme Court noted in *Merrill* that "the respondents reasonably believed that their entire crop was covered by petitioner's insurance . . . so we assume that recovery could be had against a private insurance company." *Merrill*, 332 U.S. at 383.

Nonetheless, in the context of federally reinsured crop insurance policies, courts have generally held that the private insurance company is still protected from coverage by estoppel because "[t]he statements of an insurance company employee cannot be applied to extend coverage where there is none because the doctrine of estoppel cannot extend coverage beyond that authorized by the policy." *William J. Mouren Farming, Inc. v. Great Am. Ins. Co.*, No. CV F 05-0031 AWI LJO, 2005 WL 2064129, at *10 (E.D. Cal. 2005) (citing *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983)). In *Walpole v. Great Am. Ins. Co.*, 914 F. Supp. 1283 (D.S.C. 1994), the court addressed the very question of whether the prohibition against estoppel outlined in *Merrill* would apply to reinsured policies (and private insurance companies) as well as FCIC-issued policies, and the court determined that the statements at issue, although made by defendant insurance company's adjuster, could not extend coverage where coverage did not exist because of the estoppel doctrine, thereby adopting the *Merrill* principles as applicable to the private insurance company defendant. *Id.* at 1290 (citing *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983)).

As to the crop insurance policy at issue, then, if the policy was properly voided, neither the federal Defendants nor NAU can be estopped from denying coverage based on any reliance by

Plaintiffs on NAU's confirmation that insurance attached. Dusty made a material misrepresentation on the policy application by failing to disclose his parents' substantial beneficial interest in the Skymont Farms crop, and he is charged with knowledge that such disclosure was necessary pursuant to the applicable regulations. To allow NAU's agent's representations or NAU's acceptance of the insurance policy to allow coverage under a federally reinsured crop insurance policy when it was properly voided would contravene the prohibition against estoppel.

The prohibition against estoppel that extends equally to NAU, however, does not necessarily mean that NAU can be absolved of all possible liability to Plaintiffs. Several courts have noted that insureds can maintain state law claims against private insurance companies which issue reinsured crop insurance policies. "[T]he RMA has not extinguished state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts." *Farmers Crop Ins. Alliance v. Laux*, 442 F. Supp. 2d 488, 491 (S.D. Ohio 2006); *see also Mills*, 2008 WL 2250256, at *8 (the FCIA does not preempt "state common law claims against a private insurance company for negligence, breach of contract, bad faith refusal to pay, and unfair trade practices"). "[F]armers are not prevented from suing their private crop insurance company under state law when that insurance company denies the farmer's claim." *Laux*, 442 F. Supp. 2d at 498. The United States Court of Appeals for the Eighth Circuit also recognized that general contract principles could apply to the FCIC even in the absence of the ability to estop the government, stating that "[w]hile we do not hold the government liable under an estoppel theory. . . the factual background regarding the FCIC's course of dealing with these growers must be considered under basic principles of good faith and fairness. One may have to turn 'square corners' when dealing with a governmental entity, but this does not mean the government may operate so recklessly so as to put parties dealing with

27

it entirely at its mercy." *A.W.G. Farms, Inc. v. Fed. Crop Ins. Corp.*, 757 F.2d 720, 728-29 (8th Cir. 1985); *see also Wiley v. Glickman*, No. A3-99-32, 1999 WL 33283312, at *13-14 (D.N.D. Sept. 3, 1999).

Plaintiffs have conceded, however, that if the policy was properly voided, they have no other state law claims *in this action* that would survive. While Plaintiffs have asserted a variety of state law claims in a separate case against the local agent and insurance agency through which crop insurance was obtained, in this case the Complaint asserts no state law claims against NAU that survive a finding the policy was properly voided. As such, and because the Court has determined that the policy was properly voided and the Defendants cannot be estopped from denying coverage, there are no claims that remain against any of the Defendants named herein.

## IV.   CONCLUSION

For the reasons explained above, the Court **ORDERS** that the motions for summary judgment filed by federal Defendants and NAU [Docs. 54 & 56] are **GRANTED** and the motion for summary judgment filed by Plaintiffs [Doc. 50] is **DENIED**. The Clerk is directed to close this case.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE